**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANGEL LUIS SANTOS, et al., | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **NO. 10-7266** |
| SECRETARY OF D.H.S., et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MEMORANDUM OPINION**

Tucker, J.                                                              July ___, 2012

      Presently before the Court is Plaintiffs' Amended Complaint (Doc. 30); Defendant Lutheran Children and Family Services' Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 39); Defendant Mary Louis Johnson's Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 57); and Plaintiffs' Response to Defendants' Motions (Doc. 66). Upon careful consideration of the parties' submissions and for the reasons set forth below, Defendants' Motions to Dismiss are granted and Plaintiffs' Amended Complaint will be dismissed with prejudice as to all Defendants.

**I.      PROCEDURAL HISTORY**

      Plaintiff Angel Luis Santos ("Plaintiff Santos" or "Santos") initiated this action on December 15, 2010 on behalf of himself and his biological children, Gabriel Luis Santos and Sarah Nicole Santos ("the children" or "Co-Plaintiffs") with an application to proceed in forma pauperis. (Doc. 1). Following a series of requests for enlargements of time within which to file responses to Defendants' Motions to Dismiss (Docs. 13, 14, 18), Plaintiff Santos filed a Motion

for Leave to Amend the Complaint on June 20, 2011 in order to "clarify the judgment." (Doc. 20). Plaintiff Santos filed his Amended Complaint on July 25, 2011. (Doc. 30). Defendants Lutheran Children and Family Services ("LCFS") and Mary Louise Johnson ("Johnson") then filed renewed Motions to Dismiss. (Docs. 41, 57).

After being granted a number of extensions of time in which to file a response to Defendants' renewed Motions to Dismiss Plaintiffs' Amended Complaint, (Docs. 49, 54, 61), Plaintiff Santos still failed to timely file a substantive response to Defendants' Motions.[1] Under the local rules, "[i]n the absence of [a] timely response [to a motion], the motion may be granted as uncontested . . . . ." E.D. PA. R. 7.1(c). Despite this rule, because Plaintiff proceeds pro se, the Court will review the merits of the arguments in Defendants' Motions.

## II.   FACTUAL BACKGROUND

Plaintiff Santos is a prisoner currently incarcerated in the United States Medical Center for Federal Prisoners in Springfield, Missouri. (Doc. 60). Defendant, Secretary of the Philadelphia Department of Human Services ("DHS") ("Secretary"),[2] is the presumed head of DHS. Defendant LCFS is one of many non-profit agencies that contracts with DHS to provide foster care services to children. (Doc. 41, pg. 3). Defendant Johnson was appointed as counsel by the Court of Common Pleas of Philadelphia County to represent Plaintiff Santos during his parental rights termination proceedings. (Doc. 57, pg. 5).

Plaintiff Santos, along with his children initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated their First, Fourth, Fifth, Sixth, Eighth, and

---

[1] Although Plaintiff filed a document in response to Defendants' Motions (Doc. 66); this response was simply yet another request to the Court for more time to respond.

[2] The Court recognizes that Defendant Secretary has failed to respond to any of Plaintiffs' pleadings. Notably, in support of his Request for Default against Defendant Secretary, Plaintiff alleges that "[DHS] has yet to file a defense to either the original or amended complaint." (Doc. 46, pg. 4.) However, Defendant Secretary could not have responded to Plaintiffs' Amended Complaint because Defendant Secretary was never properly served. See (Doc. 58) (summons returned unexecuted as to Defendant Secretary).

Fourteenth Amendment constitutional rights during the time when Plaintiff Santos' children were first placed in foster care, and continued throughout the time Santos' parental rights were terminated on December 9, 2008. (Doc. 39, ¶ 32).

The facts construed in the light most favorable to Plaintiffs are as follows. On November 26, 2006, Santos was arrested for a criminal violation and subsequently incarcerated. (Doc. 30, ¶ 8). In December 2006, when DHS was informed that the children were "home alone," they removed the children from Plaintiff Santos' home and placed them in the custody of their older sister, Alicia Santos.  (Doc. 30, ¶¶ 8-9). After a visit from his children in January 2008, Plaintiff Santos was informed by the children that Alicia Santos was being physically abused by her live-in boyfriend. (Doc. 30, ¶ 15). Plaintiff Santos immediately informed an agent of LCFS and requested that the children be removed from their sister's custody and placed with another family member. (Doc. 30, ¶ 16-17).

A few months later in May 2008, Plaintiff Santos was informed by the children that LCFS placed them in foster care within the home of Michael and Deborah Bickings ("Mr. and Mrs. Bickings"). (Doc. 30, ¶ 20; Doc. 41, pg. 3). Plaintiff Santos was engaging in limited contact with the children, when in October 2008, he received a notice for a Petition for a Finding of Involuntary Termination of Parental Rights and notice of the court's appointment of Defendant Johnson as counsel. (Doc. 30, ¶ 26-27). On December 9, 2008, Plaintiff Santos' parental rights were terminated in proceedings before the Honorable Flora Barth Wolf in the Court of Common Pleas of Philadelphia County. (Doc. 3, pg. 16; Doc. 57, pg. 3). Following the termination of Plaintiff Santos' parental rights, Mr. and Mrs. Bickings subsequently adopted Co-Plaintiffs. (Doc. 41, pg. 3).

Plaintiffs' original Complaint alleged violations of their civil rights pursuant to 42 U.S.C. § 1983, and violations of rights guaranteed to them by the First, Fifth, Sixth, Eighth, and

Fourteenth Amendments. (Doc. 3, pgs. 6-7).[3] In addition to the claims alleged in his original

Complaint, Plaintiffs' Amended Complaint also asserts violations of additional rights guaranteed

to them by the Fourth Amendment. (Doc. 30). The Amended Complaint contains a plethora of

different claims regarding a variety of different incidents.[4] The majority of the claims, however,

---

[3] Plaintiffs' original Complaint contains three paragraphs alleging that Defendants violated his constitutional rights. Plaintiff avers as follows:

(1) Defendant Secretary failed to enact policies that would have protected Plaintiff Santos' parental rights; denied services to Alicia Santos; ignored Plaintiff Santos' requests/suggestions for placement; failed to inform Plaintiff Santos of the children's placement; prevented the children from corresponding with Plaintiff Santos; and moved to have the children adopted, in violation of the First, Fifth, and Fourteenth Amendments. (Doc. 3, pgs. 5-6).

(2) Defendant LCFS denied services to Alicia Santos; falsely reported that the children were being abused; failed to inform Plaintiff Santos of "the danger of adoption" to the children; and discontinued medical treatment and therapy for the children, in violation of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. (Doc. 3, pgs. 6-7).

(3) Defendant Johnson failed to comply with Plaintiff Santos' request for placement of the children with family and deprived Plaintiff Santos of effective assistance of counsel in violation of the Sixth Amendment. (Doc. 3, pg. 7).

[4] Plaintiffs' Amended Complaint contains seven counts alleging that certain acts resulted in the denial of his constitutional rights. Plaintiffs aver as follows:

Count I -Violation of First Amendment because Defendants deprived Plaintiff Santos of "meaningful communication with or between [Co-Plaintiffs]" (¶ 46); censored and/or blocked Plaintiff Santos' correspondence to his children (¶¶ 47, 55, 56,59); kept his children from attending and/or testifying at Plaintiff's unrelated criminal trial (¶¶ 48, 49, 52); failed to give Plaintiff Santos a meaningful opportunity to voice his concerns regarding the safety of his children (¶¶ 50, 51); prevented Plaintiff Santos from representing himself at the hearing to terminate his parental rights (¶¶ 53, 54); and ignored Plaintiff Santos' petitions and requests for information (¶¶ 57, 58).

Count II - Violation of Fifth Amendment because Defendants failed to adequately provide services to and/or protect Co-Plaintiffs (¶¶ 61, 66, 70, 71, 72, 83, 90, 92); discriminated against Plaintiff Santos by refusing to permit the children to visit Santos and/or other family members (¶¶ 62, 63, 74); kept children from attending and/or testifying at Plaintiff Santos' unrelated criminal trial (¶¶ 63, 64, 65); censored and/or blocked Plaintiff Santos' communications with the children (¶ 72, 75; 89); ignored Plaintiff Santos' suggestions for Co-Plaintiffs' placement (¶¶67, 69, 76, 91); and ignored/denied Plaintiff Santos' petitions and requests for information (¶¶ 68, 73, 77, 78, 81, 82, 84, 85, 86).

Count III - Violation of Fourteenth Amendment because Defendants infringed on Plaintiff Santos' "liberty interest"by preventing his children from visiting him (¶¶ 94, 95); kept the children from attending and/or testifying at Plaintiff Santos' unrelated criminal trial (¶¶ 96, 97, 98, 103); ignored Plaintiff Santos' requests/suggestions for Co-Plaintiffs' placement (¶¶ 99, 100, 101, 102, 104, 106, 108, 118, 119); failed to keep Plaintiff Santos informed regarding his children ( ¶¶ 105, 107); provided "ineffective assistance" of counsel (¶¶ 109, 110, 111, 114); disregarded Plaintiff Santos' requests for information/services (¶¶ 112, 113); and prohibited communication between Plaintiff Santos and his children (¶¶ 114, 115, 116).

Count IV - Violation of Fourth Amendment because Defendants regulated Co-Plaintiffs' every activity (¶¶121, 123); failed to keep Plaintiff Santos informed regarding his children (¶ 124); prohibited correspondence between Plaintiff Santos and the children (¶ 125, 126, 128); and ignored/denied Plaintiff Santos' petitions and requests for information (¶¶ 127, 129).

Count V - Violation of Eighth Amendment because Defendants failed to provide medical care and counseling to Co-Plaintiffs (¶¶ 131, 132).

Count VI - Violation of Fourteenth Amendment because Defendants failed to adequately protect Co-Plaintiffs and other members of the Santos family (¶ 133).

Count VII(A) - Violation of Sixth Amendment because Defendant Johnson deprived Plaintiff Santos of "meaningful representation" (¶136(A)) and the opportunity to represent himself at the hearing to terminate his rights (¶ 137(A)).

Count VII(B) - Violation of Fourth Amendment because Defendant LCFS prohibited Co-Plaintiffs from testifying at

stem from custody proceedings regarding the children in Pennsylvania state court. Plaintiffs argue, inter alia, that Defendants deprived Plaintiff Santos of his right to determine the placement of his children; withheld services to Co-Plaintiffs; impermissibly restricted Plaintiff Santos' access to his children; and failed to adequately provide notice that his parental rights might be terminated. (Doc. 3, pgs. 5-7; Doc 30). Plaintiffs generally seek declaratory, injunctive, and monetary relief against all Defendants, including a claim for punitive damages. (Doc. 30, pg. 44).

In response, Defendants LCFS and Johnson each assert in their respective renewed Motions to Dismiss that Plaintiffs' Amended Complaint is barred by the applicable statute of limitations. Defendant Johnson also argues that Plaintiffs' § 1983 claims against her are barred because she is not a state actor, and Plaintiff Santos' claims against her do not fall within the protections of the Sixth Amendment. Furthermore, Defendant LCFS argues that Plaintiff's claims should be dismissed for failure to state a claim upon which relief may be granted and that Plaintiffs' requested relief is also barred by the Rooker-Feldman doctrine.

## III.   LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail.

---

Plaintiff Santos' unrelated criminal trial (¶ 136(B)); censored and/or blocked communication between Plaintiff Santos and the children (¶¶ 137B, 138); and deprived Plaintiff Santos of the opportunity to represent himself (¶ 139).

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by, Davis v. Scherer 468 U.S. 183 (1984); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of a motion to dismiss, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In Twombly the Court made clear that it would not require a "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted).

In 2009, the Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662, 769-81 (2009). There, the Court made clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663. In evaluating whether a Plaintiff has met the pleading requirements, a district court must identify "the 'nub' of the . . . complaint -- the well-pleaded, nonconclusory factual allegation[s]." Id. at 680. "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at 679.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion to dismiss. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. Fowler v. UPMC Shadyside, 578 F.3d

203, 210-11 (3d Cir. 2009).  Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief."  Id. at 211.  If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. Id.

Notwithstanding Iqbal and Twombly, however, "[w]hen presented with a pro se litigant, [the Court has] a special obligation to construe his complaint liberally." Higgs v. U.S. Att'y Gen., 665 F.3d 333, 339 (3d Cir. 2011). Thus, even if a pro se plaintiff's claims are not set out in the clearest fashion, the Court is obligated to discern all the possible claims that the Plaintiff may be alleging. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## IV.   DISCUSSION

Defendants LCFS and Johnson have asked the Court to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) based upon several arguments. Moreover, although Defendant Secretary has not had the opportunity to response to Plaintiffs' Amended Complaint due to lack of service, the Court will address Plaintiffs' claims against Defendant Secretary sua sponte pursuant to 28 U.S.C. § 1915.

### A.   **Plaintiffs' Claim was filed within the applicable statute of limitations.**

Both Defendants allege that Plaintiffs' claims are barred by the statute of limitations. The "Third Circuit Rule" permits a limitations defense to be raised in a 12(b)(6) motion if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations . . . . If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).

Defendants claim that Plaintiffs' § 1983 and § 1985 claims are untimely.[5] The Supreme Court has held that the state statute of limitations for personal injury actions applies to § 1983 and § 1985 claims. See Wilson v. Garcia, 471 U.S. 261, 269 (1985); Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 80 (3d Cir. 1989). The statute of limitations for a personal injury action in Pennsylvania is two years, accordingly, the same limitations period applies to § 1983 and § 1985 actions. See Garvin v. City of Phila., 354 F.3d 215, 220 (3d Cir. 2003); Bartholomew v. Fischl, 782 F.2d 1148, 1155 (3d Cir. 1986); Knoll v. Springfield Twp. Sch. Dist., 763 F.2d 584, 585 (3d Cir. 1985). Under federal law, the statute of limitations begins to run from the time when the plaintiff knows or has reason to know of the injury. Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety, 411 F.3d 427, 435 (3d Cir. 2005), overruled on other grounds by Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010); Oshiver, 38 F.3d at 1386.

As stated above, Plaintiffs' Amended Complaint alleges violations of their civil rights pursuant to 42 U.S.C. § 1983 stemming from the placement of Co-Plaintiffs in the foster care system and the subsequent termination of Plaintiff Santos' parental rights on December 9, 2008. Within their Amended Complaint, Plaintiffs cite to various dates on which they allege Plaintiffs' constitutional rights were violated. Giving Plaintiffs the benefit of the doubt, the latest date on which they were aware of the events that led to their alleged injury is the date when Plaintiff Santos' parental rights were terminated, December 9, 2008, and thus, Plaintiffs were required to file the Complaint within two years, or by December 9, 2010. (Doc. 3 pg. 6, 16).

The general rule is that a complaint is considered filed when the filing fee is paid or the request to proceed in forma pauperis is granted. See Hughes v. Smith, 237 Fed. Appx. 756, 759 (3d Cir. 2007) (citing McDowell v. Del. State Police, 88 F.3d 188, 191 (3d Cir. 1996)); Taylor v.

_____

[5] Plaintiffs allude to a conspiracy claim in their Amended Complaint, but did not specifically plead a cause of action pursuant to 42 U.S.C. § 1985. (Doc. 39, ¶ 39).

Naylor, No. 04-1826, 2006 WL 1134940, at *3, (W.D. Pa. Apr. 6, 2006) (citing Williams-Guice v. Bd. of Educ., 45 F.3d 161, 162-63 (7th Cir.1995)). The filing of an in forma pauperis ("IFP") application tolls the statute of limitations until leave to proceed IFP is granted or denied. Richardson v. Diagnostic Rehab. Ctr., 836 F.Supp. 252, 254 (E.D. Pa.1993).

      The Supreme Court has created an exception to this general rule in the form of the "prisoner mailbox rule," which provides that an inmate's pleadings are deemed filed at the moment he delivers the documents to prison officials to be mailed, and not the date the documents were actually filed in court. Houston v. Lack, 487 U.S. 266, 275-76 (1988); see also Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998) (explaining that "a pro se prisoner's . . . petition is deemed filed at the moment he delivers it to prison officials for mailing"). Although this rule has typically been applied in circumstances involving habeas petitions, courts within the Third Circuit have extended this rule to other contexts, including § 1983 claims. See, e.g., Longenette v. Krusting, 322 F.3d 758 (3d Cir. 2003) (finding that the mailbox rule applies to administrative proceedings); White v. Pa. State Police, 408 Fed. Appx. 521, 522 (3d Cir. 2010) (finding that a prisoner receives the benefit of the mailbox rule for a § 1983 complaint); Smith v. Carroll, 602 F.Supp. 2d 521, 526 n.7 (D. Del. 2009) (applying the prisoner mailbox rule to a medical malpractice complaint); Pendergrass v. Gray, No. 06-2247, 2006 WL 3165007, at *4 (E.D. Pa. Oct. 30, 2006) (finding a pro se prisoner's § 1983 complaint was timely filed under the prisoner mailbox rule). The prisoner mailbox rule also applies to the filing of IFP applications which toll the statute of limitations. See, e.g., McLain, Jr. v. Alveriaz, No. 07-5551, 2008 WL 5061638, at * 3 (E.D. Pa. Nov. 25, 2008) (applying prisoner mailbox rule to prisoner's IFP application).

      Moreover, when applying the prisoner mailbox rule, many district courts will use the date the documents were signed as the presumed delivery date in cases where there is no clear record

of delivery to prison officials. Howard v. Masteron, No. 06-5632, 2009 WL 5184476, at *1 n.2 ("Pursuant to the prison mailbox rule . . . [the] documents [are] filed on the date [the plaintiff] signed them.") (citing Longenette, 322 F.3d at 761); McClain v. Alveriaz, No. 07-05551, 2008 WL 5061638, at *3 (E.D. Pa. Nov. 25, 2008) ("Courts within the Third Circuit have repeatedly applied this mailbox rule to cases where the pro se prisoner signed and/or dated his filing within the proper time limit, but it was not docketed before the deadline."); Taylor, 2006 WL 1134940, at *3 ("[G]iven the evidentiary difficulty in determining when a prisoner relinquishes control of the complaint to prison personnel, the date the plaintiff signed the original complaint is presumed to be the date the plaintiff gave the complaint to prison officials to be mailed.") (citation omitted); Sabella v. Troutner, No. 05-0427, 2006 WL 229053, at *4 (M.D. Pa. Jan. 31, 2006) (looking at the date a plaintiff signed a § 1983 complaint to deny the motion to dismiss on statute of limitations grounds).

In this case, Plaintiff Santos does not provide the Court with the date he delivered his IFP application to the prison officials. While the IFP application was not officially docketed by the Court until December 15, 2010, it was dated by Plaintiff on November 30, 2010. (Doc.1, pg. 2). And Plaintiffs' Complaint was signed on December 8, 2010. (Doc. 3, pg. 28). Thus, pursuant to the prisoner mailbox rule, Plaintiffs' IFP application and Complaint were considered filed prior to the December 9, 2010 deadline. As such, the statute of limitations defense does not present a bar to Plaintiffs' claims.

### B.   The Rooker-Feldman doctrine[6] bars Plaintiffs' claims to the extent that this Court may not engage in appellate review of a state court judgment.

Defendant LCFS contends that, to the extent that Plaintiffs seek an order from this court granting Plaintiff Santos custody of Co-Plaintiffs and reinstating Plaintiff Santos' parental rights,

---

[6] The Rooker-Feldman doctrine is named after two Supreme Court decisions, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

this Court "does not have the authority to challenge the state court's judgment." (Doc. 39, ¶ 72). The Rooker-Feldman doctrine establishes that a United States District Court has "no authority to review final judgments of a state court in judicial proceedings" and the district court lacks subject matter jurisdiction insofar as a plaintiff seeks review of a state court's judgment. Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010). "The doctrine is implicated when, in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render that judgment ineffectual." In re Madera, 586 F.3d 228, 232 (3d Cir. 2009) (citing FOCUS v. Allegheny Ct. Com. Pl., 75 F.3d 834, 840 (3d Cir. 1996)). The doctrine also applies to claims alleging that the state court's action was unconstitutional. Goodson v. Maggi, 797 F.Supp. 2d 624, 632 (M.D. Pa. 2011).

The Third Circuit has implemented a four-part test for the Rooker-Feldman doctrine: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments;" (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. Great Western, 615 F.3d at 166 (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). Since the first and third requirements are easily discernible, "[t]he second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." Id.

The second requirement "may . . . be thought of as an inquiry into the source of plaintiff's injury." Great Western, 615 F.3d at 166. The Third Circuit provided the following illustration to demonstrate the difference between when a judgment is the source of injury and when the injury is caused by a defendant's actions:

> Suppose a state court, based purely on state law terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

Id. at 166-67 (citing Hoblock v. Albany Cnty. Brd. of Elections, 422 F.3d 77, 87 (2d Cir. 2005)). A federal suit will not be barred by Rooker-Feldman if the plaintiff's injury is caused by the defendant's actions and not by the state court judgment, "even if the federal court is asked to deny a legal conclusion reached by the state court" or if the injury contributed to the court's judgment. See id. at 167-68 (finding that claims that a state court judgment was procured by certain defendants through fraud, misrepresentation, or other improper means are independent and thus not barred by Rooker-Feldman). It is important to determine whether the defendant's action is a product of the state court judgment. Id. In such cases, the action is not independent and will be barred under Rooker-Feldman. Id.

The fourth requirement of the Rooker-Feldman doctrine is meant to insure that a district court does not engage in prohibited appellate review of a state court decision and looks at the relief requested by the plaintiff. Great Western, 615 F.3d at 169. Where a plaintiff asserts a claim for damages which "may require review of state-court judgments and even a conclusion that they were erroneous," the fourth prong is not automatically satisfied. Id. at 173; see also Goodson, 797 F.Supp. 2d at 600-01. Rather, the Rooker-Feldman doctrine bars a claim to the extent that adjudicating it would mean that "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment . . . ." Easley v. New Century Mortg. Corp., 394 Fed.Appx. 946, 948 (3d Cir. 2010) (quoting In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005)).

Here, to the extent that Plaintiffs seek injunctive or declaratory relief related to the state court judgment, the Court clearly does not have jurisdiction to grant much of that relief.[7] Any judgment or order of this Court granting Plaintiff Santos custody of the children and reinstating Plaintiff Santos' parental rights would constitute an action negating the judgment of the Court of Common Pleas of Philadelphia County, Family Court Division. Because the Rooker-Feldman doctrine bars this Court from entering an order granting custody of Sarah Nicole Santos and Gabriel Luis Santos to Plaintiff Santos and/or reinstating Plaintiff Santos' parental rights, Plaintiffs' prayer for such relief is dismissed with prejudice.

However, Plaintiffs' claims for damages are not barred by the Rooker-Feldman doctrine, because they present "independent constitutional claims" that Defendants violated Plaintiffs' rights during the course of the state court process surrounding the involuntary termination and also during Santos' prior criminal hearing. See Great Western, 615 F.3d at 159; Goodson, 797 F.Supp. 2d at 636; Muhammed v. Cappellini, No. 10-2374, 2011 WL 3034393, at *3 (M.D. Pa. July 25, 2011) (upholding plaintiff's claims for damages under § 1983 and § 1985 under Rooker-Feldman). Here, Plaintiffs also seek money damages for the constitutional violations alleged in each of Counts I through VII(B) of the Amended Complaint. (Doc. 30, pg. 42). Accordingly, Rooker-Feldman does not bar Plaintiffs' claims seeking monetary damages, and the Court addresses these claims below.

    **C.**    **Plaintiffs fail to establish that Defendants violated their constitutional rights pursuant to § 1983.**

---

[7] Plaintiffs did not specifically highlight what declaratory and/or injunctive relief they are seeking in their Amended Complaint aside from the "reinstatement of the children's birth names." (Doc. 30, pg. 42). However, the Court assumes from a liberal reading of Plaintiffs' Amended Complaint that Plaintiffs likely seek the following: (1) to enjoin the state of Pennsylvania from seeking to enforce its final judgment in the interest of the children; (2) an order that the names of the children be changed back to their birth names; (3) an order that the children be placed under the guardianship of their uncle; and (4) an order to reopen Plaintiff Santos' prior criminal case to allow the children to testify.

Plaintiffs have brought their claims pursuant to 42 U.S.C. § 1983. This section of the Civil Rights Act authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

By its terms, § 1983 does not create a substantive right; it merely provides a method for vindicating federal rights conferred by the United State Constitution and the federal statutes that it describes. Baker v. McCollan, 443 U.S. 137 (1979).

> **1.      Defendant Johnson will be dismissed from the action because she is not a state actor, and Plaintiff's claims against her do not fall within the protections of the Sixth Amendment.**

Defendant Johnson argues that she is not subject to liability for Plaintiffs' claims under § 1983 because she is not a state actor. To establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the challenged conduct was committed by a person acting under color of state law; and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Parratt v. Taylor, 451 U.S. 527, 535 (1981) overruled on other grounds by, Daniels v. Williams, 474 U.S. 327 (1986); Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997).

The Supreme Court has interpreted "under color of law" to require that a defendant in a § 1983 suit be a state actor. Lugar v. Edmonson Oil Co., 457 U.S. 922, 928-29 (1982); United States v. Price, 383 U.S. 787, 794 n.7 (1966); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141-42 (3d Cir. 1995); Francis v. Lehigh Univ., No. 10-4300, 2011 WL 204749, at *4 (E.D. Pa. Jan. 24, 2011)  ("The 'under color of law' requirement means that merely private conduct, no matter

how discriminatory or wrongful, does not violate Section 1983.") (citation omitted). Even though court-appointed attorneys are employed by the state, they do not constitute state actors under § 1983. Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981) (holding that a public defender is not a state actor because he owes loyalty to the criminal defendant, not the state). Thus, "court-appointed counsel are absolutely immune from civil liability under § 1983." Black v. Bayer, 672 F.2d 309, 317 (3d Cir. 1982), cert. denied, Stoica v. Stewart, 459 U.S. 916 (1982); Davis v. City of Phila., 195 F.Supp. 2d 686, 688 (E.D. Pa. 2002); Goodson, 797 F. Supp. 2d at 637-38 (holding that an attorney appointed to represent a father in placement proceedings involving his daughter is not a state actor under § 1983). Because Johnson, as court-appointed counsel, does not qualify as a state actor, she is immune from suit under § 1983, and the § 1983 claim against her will be dismissed.[8]

Although Defendant Johnson's state actor argument disposes of all of Plaintiffs' claims against her, the Court will also address Defendant Johnson's Sixth Amendment argument in the interest of thoroughness. Defendant Johnson argues that she has not violated Plaintiff's rights under the Sixth Amendment because the Sixth Amendment does not govern civil cases. Turner v. Rogers, 131 S. Ct. 2507, 2516 (2011). "Sixth Amendment guarantees . . . are applicable only in the context of criminal prosecutions." Lahaza v. Azeff, 790 F. Supp. 88, 93 (E.D. Pa. 1992). Johnson was appointed as counsel for Plaintiff Santos' parental rights termination hearing. Plaintiff Santos' claims that Johnson either failed to properly and/or adequately prepare for the termination hearing; failed to allow Plaintiff Santos to represent himself; and failed to properly appeal the termination decision, all fall outside the scope of the Sixth Amendment since these

---

[8] Further, Defendant Johnson may not be found liable by virtue of the conspiracy allegations of the Amended Complaint. Although § 1983 liability will not generally attach against a private party, liability may attach where the private party "is a willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980). For the reasons set forth in Section E of this Memorandum Opinion, Plaintiffs' conspiracy allegations fail, therefore, so do any claims against Defendant Johnson arising out of any such conspiracy.

allegations are all related to civil proceedings. Therefore, all claims against Defendant Johnson are summarily dismissed for this reason as well.

> **2.      Plaintiffs' allegations fail to implicate Defendant LCFS in the remaining § 1983 claims.**

Defendant LCFS argues that Plaintiffs' claims must be dismissed because Plaintiff's' Amended Complaint fails to plead sufficient facts establishing that Defendant LCFS violated their constitutional rights. The averments made by Plaintiffs are insufficient to establish a violation of his rights under the First, Fourth, Fifth, Sixth, Eighth, or Fourteenth Amendments to the United States Constitution. We will examine each of the alleged violations in turn.

> **a.      First Amendment**

Plaintiff Santos alleges that prohibiting Co-Plaintiffs from testifying at his criminal trial was a deprivation of his First Amendment rights. (Doc. 30, ¶¶ 48, 52). There is no constitutional right provided under the First Amendment to testify as a witness during the trial of another person. Rather, the Compulsory Process Clause of the Sixth Amendment guarantees defendants the right to call witnesses to testify on their behalf  if they are charged with a crime, and to compel those witnesses to testify if they refuse. See U.S. CONST. Amend. VI. If the defendant calls for a witness who refuses to testify, he can request that the state subpoena him. The witness will have to obey the subpoena and come in to testify, or be held in contempt of court. See Washington v. Texas, 388 U.S. 14, 18-19 (1967); United States v. Cruz-Jiminez, 977 F.2d 95, 99-101 (3d Cir. 1992). Here, there are no facts showing that Plaintiff Santos requested the children be subpoenaed or otherwise compelled by the court during his criminal trial. An agency like DHS or LCFS would have no power to prevent the children from testifying if a subpoena had been issued. Therefore, Plaintiffs' allegations fail to establish a constitutional violation.

Furthermore, Plaintiff alleges that LCFS censored and/or blocked Plaintiff's correspondence to Co-Plaintiffs and also deprived Plaintiff of "meaningful communication with or between [Co-Plaintiffs], as well as a meaningful opportunity to voice his concerns about his children." (Doc. 30, ¶¶ 46, 47, 56). Although the censorship of prisoners' mail is protected under the First Amendment, the Court could not find any case law supporting Plaintiffs' assertion of a First Amendment protection against the censorship of private correspondence to private individuals. See Thornburgh v. Abbot, 490 U.S. 401, 413 (1989) (disputing prison officials' restrictions on prisoners receiving magazine publications through the mail); Procunier v. Martinez, 416 U.S. 396, 418 (1974) (challenging prisoner mail censorship regulations); Nasir v. Morgan, 350 F.3d 366, 369 (3d Cir. 2003) (holding prison officials' censorship of prisoner's mail constitutional). Here, Plaintiff Santos is not challenging the censorship of his incoming and outgoing mail as a prisoner, but rather the incoming and outgoing mail of Co-Plaintiffs, which is not protected by the First Amendment. Moreover, in arguing that he did not have a meaningful opportunity to voice his concerns about his children, Plaintiff Santos does not support the assertion with any facts other than that Defendants did not take heed of his suggestions. The First Amendment does not protect against this conduct either. Thus, Plaintiffs' First Amendment claims also fail.

### b.    Fourth Amendment

Plaintiffs' Amended Complaint complains of Fourth Amendment violations based upon Defendant LCFS's regulation of Co-Plaintiffs' every activity (Doc. 30, ¶¶ 121, 123), including prohibiting Co-Plaintiffs from testifying (Doc. 30, ¶136B), and failing to keep Plaintiff informed (Doc. 30, ¶ 124) by ignoring and/or denying Plaintiff's petitions and requests for information (Doc. 30, ¶¶ 127, 129). The Fourth Amendment guards "against unreasonable searches and seizures." Virginia v. Moore, 553 U.S. (2008) (quoting U.S. CONST. Amend. IV). This

amendment has been used to prohibit and/or invalidate false arrests, Garcia v. Cnty. of Bucks, 155 F.Supp. 2d 259 (E.D. Pa. 2001); false imprisonment, Groman v. Twp. of Manalapa, 47 F.3d 628, 636 (3d Cir. 1995); unreasonable seizures which use excessive force, Brower v. Cnty. of Inyo, 489 U.S. 593, 599 (1989); and searches and/or seizures of personal effects not supported by probable cause or a warrant, Katz v. United States, 389 U.S. 347 (1967). However, none of Plaintiffs' allegations fall within the ambit of conduct prohibited by the Fourth Amendment. Thus, Plaintiffs' allegations of Fourth Amendment violations lack merit.

### c.    Fifth Amendment

Plaintiffs also bring claims pursuant to the Fifth Amendment. However, the Fifth Amendment does not apply to state action. See Batkus v. Illinois, 359 US 121, 158-59 (1959); Nguyen v. U.S. Catholic Conference, 719 F.2d 52, 54 (3d Cir. 1983); Garcia, 155 F.Supp.2d at 265. Thus, Defendants are entitled to dismissal of any claim predicated on the Fifth Amendment.

### d.    Eighth Amendment

In Count V of Plaintiffs' Amended Complaint, Plaintiffs complain that Defendants failed to provide medical care and counseling for Co-Plaintiffs in violation of the Eighth Amendment (Doc. 30, ¶¶ 131-32). The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. CONST. amend. VIII. This language is intended to limit the power of those "entrusted with the criminal-law function of government." Whitley v. Albers, 475 U.S. 312, 318 (U.S. 1986) (quoting Ingraham v. Wright, 430 U.S. 651, 664 (1977)). The Eighth Amendment does not provide a right to medical care for persons who are under the custody of the state, but are not prisoners. See, e.g., Ford v. Johnson, 899 F. Supp. 227, 230 (W.D. Pa. 1995) (dismissing Eighth Amendment claims against agency defendants since it applied only to those convicted of a criminal offense). Therefore, Plaintiffs' Eighth Amendment claims are also dismissed.

**e.      Fourteenth Amendment**

Finally, Plaintiffs bring claims pursuant to the Due Process Clause and the Equal

Protection Clause of the Fourteenth Amendment because Defendants infringed on Plaintiff

Santos' "liberty interest" in preventing his children from visiting him (¶¶ 94, 95); ignored

Plaintiff Santos' requests/suggestions for Co-Plaintiffs' placement (¶¶ 99, 100, 101, 102, 104,

106, 108, 118, 119); failed to keep Plaintiff Santos informed regarding his children ( ¶¶ 105,

107); and failed to adequately protect Co-Plaintiffs and other members of the Santos family. (¶

133).[9]

Plaintiffs appear to make arguments pursuant to both the substantive and procedural due

process protections provided by the Fourteenth Amendment Due Process Clause. The Due

Process Clause forbids the states from "depriving any person of life, liberty, or property, without

due process of law." U.S. CONST. Amend. XIV § 1. To state a procedural due process claim, a

plaintiff must allege that: (1) he was deprived of a constitutional protected liberty or property

interest; and (2) the state's procedures did not provide due process of law. Matthews v. Aldridge,

424 U.S. 319 (1976); Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000). "[T]he fundamental

requirement of due process is the opportunity to be heard at a meaningful time and in a

meaningful manner." Miller, 174 F.3d at 373 (internal quotations omitted).

In this case, Plaintiffs' Amended Complaint fails to allege that their procedural due

process rights were violated during the termination hearing. On the contrary, Plaintiff Santos

confirms that he was notified about the hearing to terminate his parental rights prior to the

hearing date. (Doc. 3, pgs. 12, 15, 16; Doc. 30, ¶ 26). Plaintiffs' Amended Complaint is devoid

of any allegation that Defendant LCFS prevented Plaintiff Santos from voicing his concerns and

---

[9]Plaintiffs' Fourteenth Amendment allegations also appear to be directed at DHS or Defendant Secretary. All
allegations against Defendant Secretary are addressed in Section G of this Memorandum Opinion.

-19-

requests during the hearing. Rather, Plaintiff asserted his right of self-representation and allegedly fired his court-appointed counsel. (Doc. 3, pg. 15).

 As for Plaintiffs' substantive due process claim, the courts have long recognized that parents have a protected liberty interest in "the custody, care, and management of their children" Miller v. City of Phila., 174 F.3d 368, 373 (3d Cir. 1999) (quoting Santosky v. Kramer, 455 U.S. 745, 753 (1982)); see also Anspach v. City of Phila., 503 F.3d 256, 261 (3d Cir. 2007). Parents also maintain a protected liberty interest in a relationship with their children even when custody has temporarily been granted to the state. Winston by Winston v. Children & Youth Svcs. of Delaware Cnty., 748 F. Supp. 1128, 1134 (E.D. Pa. 1990). Further, the non-custodial parent has a liberty interest in his right to communicate with and visit the child. Id.; see also Williams v. Carros, 576 F. Supp. 545, 547 (W.D. Pa. 1983) ("[R]egular and appropriate visits between [a mother] and her children . . . and appropriate visits between the children . . . are fundamental liberty interests protected by the Constitution."). However, this liberty interest is not absolute. Croft v. Westmoreland Cnty. Children & Youth Servs., 103 F.3d 1123, 1125 (3d Cir. 1997). "The state may intervene in the relationship between parent and child where intervention serves the interests of the state or the interests of the child." Winston, 748 F. Supp. at 1134. "Once it has been determined that the state is justified in removing a child from the home, it seems unlikely that the Due Process Clause requires the state to make substantial efforts to reunify the family." Id. Moreover, the Due Process Clause does not confer an affirmative right to governmental aid. Id.

The Due Process Clause also requires the state to provide children in foster care with their basic needs – "minimally adequate food, clothing, shelter, medical care, safety, freedom from bodily restraint and reasonable training to ensure the latter two rights." Doe v. N.Y. City Dep't of Social Servs., 670 F. Supp. 1145, 1172 (S.D.N.Y. 1987), appeal after remand, 709 F.2d

782 (2d Cir. 1983).In determining the minimum level of care and treatment required by the Fourteenth Amendment, the Supreme Court adopts a standard of reasonableness as determined by the prevailing professional standards in a given area. Winston, 748 F. Supp. at 1135. "[T]he decision, if made by a professional, is presumptively valid." Id. (quoting Youngberg v. Romeo, 457 U.S. 307, 323 (1982)). In making the decisions, the state "has considerable discretion in determining the nature and scope of its responsibilities." Youngberg, 457 U.S. at 317.

Plaintiffs' substantive due process allegations stem from Defendant LCFS's actions after the children had already been removed from their home and entered the foster care system. At that point, Defendant LCFS, as the de facto guardian of the children, had the discretion to make decisions that were in their best interests. Plaintiffs make no allegations that Defendant LCFS's actions failed to meet a standard of reasonableness – they merely make blanket assertions that the actions were violations of Plaintiff Santos' constitutional rights as a parent. In addition, Defendant LCFS had no duty to protect other members of the Santos family that were not under its care, i.e., Co-Plaintiffs' sister, and Plaintiffs provide no allegations regarding how Defendant LCFS failed to adequately protect Co-Plaintiffs when they were in the custody of their older sister. Thus, all of Plaintiffs' due process claims fail.

Plaintiffs' equal protection claim also fails. The Equal Protection Clause of the Fourteenth Amendment "prohibits selective enforcement of the law based upon considerations such as race." Whren v. United States, 517 U.S. 806, 813 (1996). In order to state a § 1983 claim arising under the Equal Protection Clause, a plaintiff must allege that he "received different treatment from that received by other individuals similarly situated." Shuman v. Penn Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir. 2005) (citing Andrews, 895 F.2d at 1478); see also Caban v. Mohammed, 441 U.S. 380, 387 (1979) (holding that fathers were treated differently than

mothers in violation of the Equal Protection Clause when providing consent to termination of parental rights and adoption).

Plaintiffs' Amended Complaint does no more than assert blanket, non-specific allegations that they were treated differently because of race and/or gender. (Doc. 30, ¶¶ 62, 63, 101, 102, 104, 105, 106). There are no allegations in the Amended Complaint to illustrate how Defendants treated Plaintiffs differently than those similarly situated to them or that considerations as to race or other suspect classifications played a part in their alleged treatment. Accordingly, Plaintiffs' Amended Complaint fails to state a claim pursuant to § 1983 for a deprivation of constitutional rights pursuant to the Equal Protection Clause of the Fourteenth Amendment and is therefore dismissed.

### E.    Plaintiffs have failed to sufficiently plead that a conspiracy existed among the Defendants.

Within their Amended Complaint, Plaintiffs allude to an alleged conspiracy amongst the Defendants to violate their civil rights, but have not specifically pled a separate cause of action. In order to make out a claim for conspiracy pursuant to § 1983, a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants. Bieros v. Nicola, 860 F.Supp. 223, 225 (E.D. Pa. 1994). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose. Goodson, 797 F.Supp. 2d at 638; see also Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166 (3d Cir. 1989), abrogated on other grounds by, Beck v. Prupis, 529 U.S. 494 (2000). Further, pursuant to Twombly, there must be enough specific facts to suggest "plausible grounds to infer an agreement." Goodson, 797 F. Supp. 2d at 638 (quoting Twombly, 550 U.S. at 556).

In the instant action, Plaintiffs simply allege that Defendants conspired to take actions for the purpose of depriving him of his constitutional rights. Although Plaintiffs allege a conspiracy between the various Defendants, they have failed to demonstrate any specific facts to support their allegations. Because the Amended Complaint merely makes blanket assertions that all Defendants conspired together and engaged in illegal conduct, Plaintiff's allegations are insufficient to support a conspiracy claim.

**F.**     **Plaintiffs' claim for punitive damages is unwarranted by the facts of the case.**

Defendant LCFS argues that Plaintiffs fail to allege any facts to support their request for punitive damages. Punitive damages in § 1983 cases are available where the defendants have acted with a "reckless or callous disregard of, or indifference to, the rights and safety of others." Bennis v. Gable, 823 F.2d 723, 734 (3d Cir. 1987) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). However, "punitive damages in general represent a limited remedy, to be reserved for special circumstances." Savarese v. Agriss, 883 F.2d 1194, 1205 (3d Cir. 1989) (citing Cochetti v. Desmond, 572 F.2d 102, 105-06 (3d Cir. 1978)). Within the relief requested in their Amended Complaint, Plaintiffs request punitive damages against Defendants. (Doc. 30, pg. 42). Despite this request, Plaintiff's Amended Complaint fails to allege any facts which would demonstrate a constitutional violation, let alone that the Defendants acted with either ill will or with a reckless disregard for federally protected rights of others. See Smith, 461 U.S. at 56. Thus, Plaintiffs' claim for punitive damages against Defendants is dismissed.

**G.**     **The claims against Defendant, Secretary are dismissed pursuant to § 1915(e)(2).**

Although Defendant Secretary has not been properly served in this action, and therefore has not responded to Plaintiffs' Complaint or Amended Complaint (Doc. 58), the Court will consider Plaintiff's claims against Defendant sua sponte pursuant to the provisions of the Prison

Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915. When a plaintiff proceeds in forma pauperis pursuant to § 1915, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . (B) the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In reviewing complaints under 28 U.S.C. § 1915(e)(2)(B), a federal court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See, e.g., Hyman v. Gloria, No. 10-499, 2011 WL 1627921, at *1 (E.D. Pa. Feb. 19, 2011) (dismissing a plaintiff's § 1983 claims under § 1915(e)(2)(B)(ii)).

Section 1983 liability may not be predicated on the doctrine of repondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). In order to state a claim for relief against Defendant Secretary pursuant to § 1983, Plaintiffs must demonstrate that Defendant Secretary had personal involvement in the alleged constitutional violations. Plaintiffs' Amended Complaint fails to set forth any facts as to how the Secretary was personally involved in the events surrounding the alleged wrongs against Plaintiffs.

Moreover, a municipal agency like DHS may only be held liable where a constitutional tort was caused by action pursuant to an official policy or custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). A municipal policy is made when a decision maker issues an official proclamation or decision. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986), quoted in Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990). To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision maker had notice that a constitutional violation could occur and the decision maker acted with indifference to this risk. Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).  Plaintiffs

fail to allege a particular policy, custom , or practice of DHS that caused a constitutional violation. Therefore, any claims against Defendant Secretary will be dismissed.

## V. CONCLUSION

For the reasons set forth herein, Defendants' Motions to Dismiss are granted with prejudice.[10] Furthermore, the claims against Defendant Secretary are dismissed with prejudice.[11] An appropriate Order follows.

---

[10] Defendant LCFS also argues that Plaintiff's Amended Complaint should be dismissed for failure to comply with Federal Rules of Civil Procedure 8 and 15. However, because the Court finds that Plaintiff's claims against LCFS are substantively deficient, the Court will not address these arguments.

[11] The Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint – regardless of whether the plaintiff requests to do so  – when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). In this instance, Plaintiffs have already had an opportunity to file an Amended Complaint, and the Court finds that permitting Plaintiffs to file yet another Amended Complaint would be futile.